IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LYNEE BONEY**, <br><br> Plaintiff, <br><br> v. <br><br> **MYDOC URGENT CARE,** <br><br> Defendant. | **CIVIL ACTION** <br><br> **NO. 19-2309-KSM** |

**MEMORANDUM**

**MARSTON, J.**                                                                                    **March 31, 2020**

Plaintiff Lynee Boney alleges that her former employer, Defendant MyDoc Urgent Care, discriminated against her during her pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101. (Doc. No. 1.) She also claims that MyDoc failed to pay her overtime wages as required by the Federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, and the Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. § 333.101. (*Id.*)

MyDoc filed a Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. No. 9), arguing that Boney's Title VII and ADA claims must be dismissed because Boney cannot show that MyDoc employed "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" as required by both statutes.[1] *See* 42 U.S.C. § 2000e(b) (Title VII); 42 U.S.C. § 12111(5)(A) (ADA). In support of that argument, MyDoc relies on its payroll records (Doc. No. 14); the affidavit of Jing Jing Cai,

---

[1] MyDoc also asks the Court to remand the Pennsylvania Minimum Wage Act claim to state court. (Doc. No. 9.) MyDoc's Motion does not mention Boney's FLSA claim.

owner of MyDoc, who affirmed that at "no time between the years 2017 and the present did MyDoc Urgent Care ever employ more than 9 full time employees" and "5 – 6 part time employees" (Doc. No. 9 at p. 8); and Cai's supplemental certification, which states that "[s]ince 2017 MyDoc has only employed three employees on any given day at either [of its two] location[s]. MyDoc only employs six employees per day." (Doc. No 13 at pp. 6–7.)

The Court has reviewed MyDoc's motion (Doc No. 9), Boney's response brief (Doc. No. 10), the parties' stipulation (Doc. No. 12),[2] and MyDoc's reply brief (Doc. No. 13.), along with MyDoc's payroll records (Doc. No. 14) and Cai's affidavit and certification (Doc. No. 9 at p. 8; Doc. No. 13 at pp. 6–7). Because the Court has looked beyond the pleadings, it will treat MyDoc's motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering the evidence presented by the parties, the court must draw all reasonable inferences in favor of the non-moving party. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

MyDoc argues that summary judgment is appropriate at this stage because its payroll records and Cai's certification show that MyDoc "does not employ more than 15 employees on any given day of the year." (Doc. No. 13.) But that argument misstates the standard. It is well

---

[2] After the motion and response brief were filed, the parties stipulated that MyDoc would provide its payroll records to Boney, Boney would review the records, and the parties would attempt to reach an agreement on whether MyDoc employed 15 employees during the relevant time period. (Doc. No. 12.) If the parties failed to reach an agreement, they could file additional briefs on the Motion to Dismiss. The parties confirmed at an initial pretrial conference with the Court that they were unable to reach an agreement. MyDoc filed a reply brief, and Boney chose to stand on her initial response brief.

established that under the payroll method, "the ultimate touchstone under § 2000e(b)" is not the number of individuals compensated on a given day, but rather "whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question."[3]  *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 212 (1997); *Parks v. Woodbridge Golf Club, Inc.*, No. 11-0562, 2016 WL 8716606 at *3 (E.D. Pa. July 22, 2016) ("In *Walters*, the U.S. Supreme Court held that the 'payroll method' is the proper way of determining 'whether the employer has an employment relationship' with an individual." (quoting *Walters*, 519 U.S. at 212).)  Under this test, "all one needs to know about a given employee for a given year is whether he started or ended employment during that year and, if so, when. He is counted as an employee for each working day after arrival and before departure." *Walters*, 347 F.3d at 211.

Taken in the light most favorable to Boney, Cai's affidavit shows that MyDoc had as many as 15 employees during the relevant time period. (*See* Doc. No. 9 at p. 8 (stating that MyDoc employed as many as nine full time employees and six part time employees).)  In addition, the 2018 summary of employees included with MyDoc's payroll records suggests that as many as 16 employees may have been employed by MyDoc at any given time during that year.[4]  (*See* Doc No. 14 at p. 63.)  Because there remains a genuine dispute as to whether

---

[3] The payroll method applies in the ADA context as well as Title VII.  *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003) (concluding that Title VII's fifteen-employee requirement is an element of plaintiff's claim that is "in all relevant respects indistinguishable from" the ADA's fifteen-employee requirement); *De Jesus v. LTT Card Servs. Inc.*, 474 F.3d 16, 21 (1st Cir. 2007) (applying the *Walters* framework to the ADA's fifteen-employee requirement, as well as Title VII).

[4] For 2017, MyDoc submitted a one-page summary that gives the name of each employee, their position in the company, and whether they worked for the company in a full or part time capacity. (Doc. No. 14 at p. 1.)  MyDoc also provided a copy of each employee's W2 and each employee's first and last paystub for that year. (*Id.* at pp. 2–62.)  For 2018, MyDoc provided a similar summary, along with paystubs and W2s for some of its employees. (*Id.* at pp. 63–85.)  However, it has not provided paystubs and W2s for all of the employees listed in the 2018 summary, making it impossible to tell when those individuals were employed by the company.

MyDoc had at least 15 employees, summary judgment is inappropriate at this stage.

An appropriate order follows.